IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CV-697-BO

| | | |
|---|---|---|
| JUSTIN P. HOOTEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| WALMART INC., | ) | |
| | ) | |
| Defendant. | ) | |

This cause comes before the Court on defendant's motion to dismiss for failure to state a claim. Also on the docket are plaintiff's motion for extension of time to file response and defendant's motion to stay discovery. For the following reasons, plaintiff's motion for extension of time and defendant's motion to dismiss are granted, and defendant's motion to stay is denied as moot.

BACKGROUND

On November 7, 2019, plaintiff Justin Hooten filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) against her former employer, defendant Walmart Inc., in Wake County Superior Court. DE 1-1, 40. In her charge, plaintiff alleged that defendant subjected her to transgender-based harassment, constructively discharged her, and retaliated against her, all in violation of Title VII of the Civil Rights Act of 1964. *Id.* at 40–41. The EEOC declined to act on plaintiff's charge and informed plaintiff of her right to sue on August 6, 2020. *Id.* at 10. Subsequently, plaintiff filed this lawsuit in Wake County Superior Court on November 3, 2020, seemingly bringing the same claims that she alleged in her EEOC charge. Defendant timely removed the lawsuit to this Court on December 29, 2020, DE 1.

Plaintiff began working for a Walmart store in August 2018. DE 1-1, 19. After experiencing some medical complications following a procedure, she returned to work at a Walmart store in Charlotte, NC in April 2019. *Id.* Plaintiff later transferred to a Walmart store in Raleigh and began experiencing alleged discrimination. *Id.* Assistant Manager Daniel Whitner called her "it" and avoided her. *Id.* at 18–19. Another employee told plaintiff that Mr. Whitner had a problem with plaintiff's "situation" and that Mr. Whitner said that "he didn't have to respect [plaintiff]." *Id.* at 12–13. Manager Soycoya Gregory "rolled her eyes at [plaintiff]." *Id.* at 18. Ms. Gregory disciplined plaintiff on September 20, 2019 for allegedly being unproductive. *Id.* at 13. On September 20, 2019, plaintiff was directed to speak with Jeremy Studl, the new store manager. *Id.* at 18. At Mr. Strudl's request, plaintiff submitted a written complaint about her issues with Mr. Whitner, and Mr. Strudl told plaintiff that he would take care of the issue. *Id.* However, plaintiff never heard back from Mr. Strudl or any manager. *Id.* When plaintiff followed up on her complaint with Mr. Strudl, he informed her that he needed more time. *Id.* Plaintiff claims that she experienced a hostile work environment that caused her emotional distress, which resulted in her severing her employment from Walmart. *Id.* Plaintiff experienced increased anxiety and depression because of her experience, and she subsequently attended outpatient therapy. *Id.* Plaintiff filed a complaint with Walmart Corporate after she severed her employment with the company. *Id.*

## DISCUSSION

*Motion to File Response Out of Time*

Plaintiff has filed a motion for extension of time to file her response to defendant's motion to dismiss for failure to state a claim. Where a motion to extend time is filed after the deadline for filing has expired, the moving party must show excusable neglect. Fed. R. Civ. P.

2

6(b)(1)(B). In determining if a party's neglect is excusable, courts consider "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993); *Agnew v. United Leasing Corp.*, 680 Fed App'x 149, 155 (4th Cir. 2017).

Defendant has not responded in opposition to this motion, and the time for doing so has passed. Plaintiff filed this motion, with the attached response, only one day after the deadline for filing. Plaintiff asks for the extension because she originally mailed her response in opposition to this Court, but she was later told that the document had not been received. Plaintiff provides a receipt from UPS showing that an item was delivered on February 22, 2021, which was before the deadline to file a response. Upon learning that the document had not been received, plaintiff filed this motion and her response in opposition by hand. Defendant will suffer no prejudice from the delayed filing of the answer. For good cause shown, the Court grants plaintiff's motion for extension of time to file out of time a response in opposition. This Court deems plaintiff's response timely filed and includes this response in its consideration of defendant's motion to dismiss.

*Motion to Dismiss*

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means that the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must be dismissed if the factual allegations do not nudge the plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The complaint "must plead sufficient facts to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of misconduct." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (internal quotations omitted). "[T]he court need not accept the plaintiff's legal conclusions drawn from the facts, nor need it accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (internal quotations omitted).

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents attached to the complaint "so long as they are integral to the complaint and authentic." *Id.* Although the Court must construe the complaint of a *pro se* plaintiff liberally, such a complaint must still allege "facts sufficient to state all the elements of her claim" in order to survive a motion to dismiss. *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). Here, even when construed liberally, plaintiff's complaint fails to allege facts sufficient to support any plausible legal claim.

A. Hostile Work Environment

To prove a hostile work environment claim, plaintiff must show "(1) unwelcome conduct; (2) that is based on the plaintiff's [protected status]; (3) which is sufficiently severe or pervasive to alter her conditions of employment and to create an abusive work environment; and (4) which

4

is imputable to the employer." *Strothers v. City of Laurel*, 895 F.3d 317 (4th Cir. 2018) (citing *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011)). Defendant argues that plaintiff fails to meet prongs two and three of the test for hostile work environment. Even assuming that plaintiff has shown that defendant's conduct was based on plaintiff's protected status, she fails to show that defendant's conduct is sufficiently severe or pervasive to alter her conditions of employment and create a hostile work environment.

To show that defendant's conduct was sufficiently severe or pervasive, the "objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (internal quotations omitted); *Jennings v. Univ. of N. Carolina*, 482 F.3d 686, 696 (4th Cir. 2007). These circumstances include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 178 (4th Cir. 2001). "Title VII does not provide a remedy for every instance of verbal and physical harassment in the workplace," and it does not guarantee a federal employee a workplace of refinement and sophistication. *Lissau v. Southern Food Serv., Inc.*, 159 F.3d 177, 183 (4th Cir 1998); *Hartsell v. Duplex Prods. Inc.*, 123 F.3d 766, 773 (4th Cir. 1997). "[N]ormally petty slights, minor annoyances, and simple lack of good manners" are not sufficient to support a hostile work environment claim. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

In her complaint, plaintiff alleges that Ms. Gregory rolled her eyes at her, and plaintiff also seems to imply that Ms. Gregory was overly critical of plaintiff's work. However, this behavior is not sufficiently severe or pervasive to constitute a hostile work environment claim. *See Threat v.*

5

*Potter*, No. 3:05-CV-116-DCK, 2008 U.S. Dist. LEXIS 51153, at \*7, \*10 (W.D.N.C. July 2, 2008) (finding that plaintiff's allegation that she was subjected eye rolling, micromanagement, and criticism by her supervisor did "not meet the standard articulated by the Supreme Court for a hostile work environment and [were] not likely to be found hostile or pervasive by a reasonable person"); *Buchhagen v. ICG Int'l Inc.*, 545 Fed. App'x 217, 219 (4th Cir. 2013) (per curiam) (finding that allegations of a supervisor mockingly yelling at plaintiff in a meeting, repeatedly harping on a mistake made by plaintiff, and unfairly scrutinizing and criticizing plaintiff's failure to follow directives fell "far short or being severe or pervasive enough to establish an abusive environment").

Plaintiff further alleges that Mr. Whitner avoided her and called her "it," apparently instead of using her preferred pronoun. This behavior is also not severe or pervasive enough to support a hostile work environment claim. *See Daugherty v. Food Lion, LLC*, No. 1:04CV278, 2006 U.S. Dist. LEXIS 43042, at \*43–44 (W.D.N.C. June 13, 2006) (finding that plaintiff's allegations that his supervisor would ignore him and "refuse to make eye contact with him" behavior that was unfriendly and rude but insufficient to sustain a hostile work environment claim); *Milo v. Cybercore Techs., LLC*, No. RDB-18-3145, 2019 U.S. Dist. LEXIS 160386, at \*17 (D. Md. Sept. 17, 2019) (dismissing plaintiff's transgender-based harassment claim because, although plaintiff was offended by references to "him" or "he" rather than "her" or "she," the alleged incidents were sporadic and none were extremely serious); *Tims v. Carolina Healthcare Sys.*, 983 F. Supp. 2d 675, 681 (W.D.N.C. 2013) (granting motion to dismiss where plaintiff alleged her supervisor referred to her as "you people" and "y'all blacks").

Plaintiff fails to allege sufficient facts to constitute a hostile work environment claim. Title VII is not meant to become a general civility code. *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 208

6

(4th Cir. 2019) (citations omitted). While plaintiff alleges conduct that may be unprofessional or rude, rude treatment, even by a supervisor, is not enough to sustain a hostile work environment claim. *See Baqir v. Principi*, 434 F.3d 733, 747 (4th Cir. 2006). Plaintiff's allegations in no way rise to behavior that was "hostile or deeply repugnant." *See Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 753 (4th Cir. 1996) (finding that a working environment must be "hostile or deeply repugnant," not "merely unpleasant," to be actionable).

### B. Constructive Discharge

In addition to bringing a claim for hostile work environment, plaintiff alleges that she was constructively discharged. Constructive discharge can amount to adverse employment action. *See James v. Booz-Allen & Hamilton Inc.*, 368 F.3d 371, 378 (4th Cir. 2004). Constructive discharge occurs when "an employer deliberately makes the working conditions intolerable in an effort to induce the employee to quit." *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 186–87 (4th Cir. 2004) (quoting *Martin v. Cavalier Hotel Corp.*, 548 F.3d 1343, 1353–54 (4th Cir. 1995)). "Intolerability of working conditions, as the circuits uniformly recognize, is assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign." *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985) (internal citation omitted), *cert. denied*, 475 U.S. 1082 (1986). "[D]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994).

Here, plaintiff fails to plausibly allege facts sufficient to meet either prong of the test for constructive discharge. Although plaintiff allegedly complained to Mr. Strudl, who "took no action," plaintiff admits that Mr. Strudl expressed a willingness to "take care" of the situation and

7

started with inviting plaintiff to write a statement. Because plaintiff's employer showed a willingness to remedy plaintiff's complaints, even though Mr. Strudl was not moving fast enough for plaintiff's approval, plaintiff cannot show that her employer was deliberately inducing her to quit. *See Revak v. Miller*, No 7:18-CV-206-FL, 2020 U.S. Dist. LEXIS 99048, at *31–32 (E.D.N.C. June 5, 2020) (holding that plaintiff failed to establish the deliberateness element where plaintiff quit even though plaintiff's supervisor agreed, in response to learning about her complaint of harassment, to fix the situation, if given the opportunity and time to do so).

As to intolerability, plaintiff is unable to show that her working conditions were intolerable because, as previously discussed, she is unable to show that those conditions were sufficiently severe or pervasive to create a hostile work environment. *See Perkins*, 936 F.3d at 212 (holding that the intolerability element of a constructive discharge claim requires "a greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment"). Plaintiff's working conditions were not intolerable such that she could not have stayed on the job while seeking relief. *See Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004) ("[U]nless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress."). Thus, plaintiff's allegations regarding Mr. Whitner and Ms. Gregory are insufficient to state a plausible claim of constructive discharge.

### C. Retaliation

Finally, plaintiff asserts a Title VII retaliation claim. To state a claim for retaliation, she must show that: (1) she engaged in protected activity; (2) defendant took employment action against her that a reasonable employee would find materially adverse, and (3) defendant took the materially adverse employment action because of the protected activity. *Foster v. Univ. of Maryland-Eastern Shore*, 787 F3d 243, 250 (4th Cir. 2015). A retaliatory adverse action is one

8

that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 68 (internal quotations omitted).

The only relevant allegation plaintiff makes to support her claim of retaliation is that she was constructively discharged. However, as previously discussed, plaintiff does not sufficiently allege a constructive discharge claim. Therefore, plaintiff cannot base a retaliation claim on an allegation that defendant constructively discharged her. Furthermore, even if plaintiff did experience negative treatment after her September 23, 2019 complaint to Mr. Strudl, such treatment did not dissuade her from making several subsequent complaints to Walmart's internal ethics hotline and the EEOC. This shows that defendant's alleged retaliation was not sufficiently adverse to maintain a viable retaliation claim under Title VII. *See Ortiz v. Big Bear Events, LLC*, No. 3:12-CV-341-RJC-DCK, 2012 U.S. Dist. LEXIS 184958, at *10-11 (W.D.N.C. Nov. 6, 2012) (dismissing a claim upon finding that the alleged adverse employment actions did "not appear likely to dissuade a reasonable worker from making or supporting a charge of discrimination") (citing *Burlington N.*, 548 U.S. at 68)). Therefore, plaintiff also fails to state a claim for retaliation.

## CONCLUSION

Accordingly, for the foregoing reasons, plaintiff's motion for extension of time to file [DE 17] is GRANTED. Defendant's motion to dismiss for failure to state a claim [DE 11] is GRANTED, and its motion to stay discovery [DE 19] is DENIED as MOOT.

SO ORDERED, this ___1___ day of April, 2021.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE